UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT MCKENNEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:15-cv-00169-GZS |
| | ) | |
| PAUL RUBASHKIN, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this action, Plaintiff Robert McKenney alleges that Defendants, three correctional officers at the Two Bridges Regional Jail in Wiscasset, violated his right to due process in connection with disciplinary matters and that they falsely charged him with criminal conduct while he was serving a sentence at the jail.

The matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 17). Plaintiff, who is no longer incarcerated, did not file an opposition to the motion. Following a review of the pleadings and summary judgment filings, and after consideration of Defendants' arguments, I recommend the Court grant Defendants' motion as to Plaintiff's federal claims, and dismiss without prejudice Plaintiff's state law claims.

## FACTS [1]

Plaintiff's claims arise as the result of disciplinary charges instituted against him while he was an inmate at the Two Bridges Regional Jail. As a consequence of the charges, Plaintiff was placed in segregated confinement and he was classified as maximum security for the duration of his time in segregation. In his complaint, Plaintiff alleges that Defendants required him to spend "months in 23-[hour] lockdown for nothing." (Complaint at 3, ¶ V, ECF No. 1.) He also asserts that he wrote "numerous grievances" that were "ignored." (*Id.* at 2, ¶ 2.C.)[2] In addition, criminal proceedings were initiated following one of the incidents in which he was involved. Plaintiff apparently maintains that the criminal charge lacked probable cause.

Plaintiff was incarcerated at Two Bridges Regional Jail from August 1, 2014, through July 11, 2015, pursuant to a judgment of conviction on a theft charge. (Defendants' Statement of

---

[1]  For purposes of summary judgment, the facts before the Court ordinarily are restricted to facts introduced by the parties through their statements of material facts, which statements must be supported by citations to evidence of record. The requirement that parties cite evidence of record is set forth both in Federal Rule of Civil Procedure 56(c) and in District of Maine Local Rule 56(b) – (d). In addition, Local Rule 56 outlines the manner by which parties must provide the Court with their factual statements and the evidence supporting the statements. Thus, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material fact setting forth each fact in a separately numbered paragraph, followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b), (f). A party opposing a motion for summary judgment must file an opposing statement of material fact that admits, denies, or qualifies the factual statements made by the moving party. D. Me. Loc. R. 56(c). Unless the statement is admitted, the opposing party must provide a citation to evidence of record that supports the opposing statement. *Id.* If a party fails to respond to a statement of material facts, the moving party's factual statements "shall be deemed admitted." D. Me. Loc. R. 56(f). Moreover, pursuant to Local Rule 7(b), parties are expected to file an objection to a motion if they contest the motion, and unless they do so are "deemed to have waived objection."

   The Court, however, "may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days." *NEPSK, Inc. v. Town of Houlton,* 283 F.3d 1, 7 – 8 (1st Cir. 2002). Instead, the Court must assess whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In particular, when the Court has before it a verified complaint, the Court may consider the statements contained therein when assessing whether a genuine issue of fact exists for trial. *Clarke v. Blais*, 473 F. Supp. 2d 124, 128 (D. Me. 2007).

   The facts set forth herein are derived principally from Defendants' Statement of Material Facts (ECF No. 18), but also include references to Plaintiff's verified complaint.

[2]  Plaintiff further develops his allegations in an attached statement of claim. (Statement of Claim, ECF No. 1-1.) Plaintiff signed and dated his complaint using language that complies with the federal statutory alternative to the oath, 28 U.S.C. § 1746.

2

Material Facts ¶ 1, ECF No. 18.)  Defendant Sgt. Kyle Canada is the assistant support services supervisor at Two Bridges Regional Jail.  (*Id.* ¶ 2.)  Defendant Paul Rubashkin is the special projects officer at Two Bridges Regional Jail and a Lincoln County deputy sheriff.  His responsibilities include the investigation and initiation of criminal matters.  (*Id.* ¶ 3.)  Defendant Captain James Bailey is currently the corrections captain at the jail, which position is second in command at the jail.  (*Id.* ¶ 4.)

On October 16, 2014, Officer Major summoned Defendant Rubashkin to Officer Major's office, where he was searching incoming mail.  Officer Major showed Rubashkin a photo that had been mailed to Plaintiff.  The photo had an abnormal bulge in the back of the paper that was orange in color.  Defendant Rubashkin peeled back the back of the photo and found an approximately 2 mg portion of a Suboxone strip.  (*Id.* ¶ 5.)  Defendant Rubashkin checked the return address, but found no record of the person whose name was listed.  (*Id.* ¶ 6.)  After discovering the Suboxone, Defendant Rubashkin listened to recordings of phone calls between Plaintiff and his girlfriend.  (*Id.* ¶ 7.)  Defendant Rubashkin learned that beginning on October 12, 2014, Plaintiff discussed with his girlfriend her sending Suboxone to the jail, and in subsequent calls he asked her if she had sent Suboxone.  (*Id.* ¶ 8.)

On October 16, 2014, after the Suboxone was detected, Plaintiff was placed in administrative segregation.  (*Id.* ¶ 9.)  On October 17, 2014, Defendant Rubashkin went to Plaintiff's cell to issue him a summons for trafficking in prison contraband.  Plaintiff refused to sign the summons, and Defendant Rubashkin summoned him for refusing to sign a uniform summons and complaint.  (*Id.* ¶ 10.)

On October 21, 2014, Plaintiff requested to be present for an upcoming classification hearing.  (*Id.* ¶ 11.)  At the classification review the next day, Plaintiff stated multiple times that

3

he knew he would be found guilty of the alleged rule violations and that officials might as well classify him as maximum security. (*Id.* ¶ 13.)

As part of its deliberations, the classification committee also considered that Plaintiff had a violent history at Two Bridges Regional Jail, had made violent threats toward staff members, had previous prison drug trafficking charges, had current prison drug trafficking charges, and was believed to have fashioned weapons during his current incarceration. (*Id.* ¶ 14.) The committee reclassified Plaintiff to maximum security. (*Id.* ¶ 15.)

On October 23, 2014, Lieutenant Colbry and Sergeant Wardwell conducted a disciplinary hearing regarding the incident. (*Id.* ¶¶ 16, 18.) Plaintiff was present at the hearing and pled not guilty. (*Id.* ¶ 17.) Officers Colbry and Wardwell found Plaintiff guilty and, as a sanction, imposed ten days of disciplinary segregation. (*Id.* ¶ 19.) Plaintiff remained on maximum security until he was reclassified to medium security on December 2, 2014, for good behavior.[3] (*Id.* ¶ 20.)

On January 28, 2015, because Plaintiff plead to other charges, the Assistant District Attorney dismissed the criminal charges against Plaintiff for trafficking in prison contraband and failure to sign the uniform summons.[4] (*Id.*)

On March 26, 2015,[5] Plaintiff and another inmate were together in the bathroom area. (*Id.* ¶ 22.) After Plaintiff and the other inmate came out of the bathroom, the other inmate was sent to the hospital with a dislocated shoulder. (*Id.* ¶ 23.) Officers suspected that a fight had occurred

---

[3]  Plaintiff states that he received 20 days segregation but spent seven weeks in segregation. (ECF No. 1-1, PageID # 6.) Plaintiff further states that he requested that the officers play the audio recordings of the phone calls for him, and that he "asked for witnesses." (*Id.*) In his complaint, he asserts that he "never touched" the narcotics. (*Id.*)

[4]  Attached to Defendants' Statement of Material Facts is a sealed copy of the Maine Rule 48(a) dismissal notice filed in Maine District Court, which notice indicates that Plaintiff pled to other charges, specifically charges associated with a criminal matter bearing another district court docket number. (ECF No. 18-2.) The filing is signed only by the prosecutor.  Plaintiff states that the judge told the assistant district attorney that Plaintiff should not have been charged because he never possessed the Suboxone. (ECF No. 1-1, PageID # 8.)

[5]  Plaintiff's complaint appears to provide a date of March 2, 2015. (*Id.*, PageID # 7.)

between Plaintiff and the other inmate, but at the time, both inmates refused to provide any information. (*Id.* ¶ 24.) On April 9, 2015, Plaintiff admitted that he had hit the other inmate. [6] (*Id.* ¶ 25.)

On April 9, 2015, Plaintiff was charged with a major infraction for fighting, lying and for conduct which disrupts. (*Id.* ¶ 26.) Sergeant Grantham, Corporal Rogers, and Officer Major conducted Plaintiff's disciplinary hearing on April 11, 2015. (*Id.* ¶ 27.) Plaintiff was present at the hearing and pled not guilty. (*Id.* ¶ 28.) The officers dismissed the charges of lying and conduct which disrupts, but found Plaintiff guilty of fighting, for which they imposed a sanction of ten days disciplinary segregation. (*Id.* ¶ 29.) Plaintiff was advised of his right to appeal, but declined. (*Id.* ¶ 30.)

In accordance with the sanction, Plaintiff was in disciplinary segregation from April 11, 2015, through April 21, 2015. [7] (*Id.* ¶ 31.) On April 13, 2015, Plaintiff was reclassified as maximum security due to his involvement in the fight. (*Id.* ¶ 32.) On April 27, 2015, because Plaintiff was not involved in any further incidents, Plaintiff was reclassified as medium security. (*Id.* ¶ 33.)

*Grievances*

The grievance procedure for the Two Bridges Regional Jail provides that an inmate can initiate a grievance for, inter alia, an alleged violation of civil, constitutional, or statutory rights. (*Id.* ¶ 34.) An inmate must first file a level one grievance. (*Id.* ¶ 35.) If an inmate is not satisfied

---

[6]   Plaintiff denies that he admitted to an assault. (*Id.*, PageID # 12.) Plaintiff states that the incident "never happened." (*Id.*) He also asserts that he filed grievances because he was punished on a charge of assault in the absence of any evidence. (*Id.*, PageID # 8.) He further contends that he was the only one charged for the incident even though "it took two (2) to fight." (*Id.*, PageID # 9.)

[7]   Plaintiff states that he spent three weeks in segregation. (*Id.*, PageID # 12.)

with the response to a level one grievance, the inmate may file a level two grievance.[8]  (*Id.* ¶ 36.) If an inmate remains unsatisfied after receiving a response to a level two grievance, the inmate may file a grievance with the Maine Department of Corrections for an external review.  The external review is the final step in the Two Bridges Regional Jail grievance procedure.  (*Id.* ¶ 37.)

During Plaintiff's incarceration at Two Bridges Regional Jail in 2014 and 2015, the only level two grievance Plaintiff filed involved the cost of making photocopies. [9]  (*Id.* ¶ 38.)

*Disciplinary Hearings*

An inmate may appeal from the decision of a disciplinary hearing officer to the Correctional Administrator or designee within ten days of the disciplinary hearing.  To appeal from a disciplinary hearing decision, the inmate must submit an appeal of disciplinary hearing decision form.  (*Id.* ¶ 39.)  The decision of the Correctional Administrator is final.  (*Id.* ¶ 40.)

Plaintiff did not appeal from any decisions issued after the disciplinary hearings to which he was a party during his incarceration at the Two Bridges Regional Jail in 2014 and 2015.  (Id. ¶ 41.)

*Classification Appeals*

An inmate may appeal from his initial classification assignment or reclassification to a higher custody level by submitting a written request on an inmate request form within five days of the decision.  (*Id.* ¶ 42.)  Plaintiff requested a review of his initial classification to maximum security on August 2, 2014.  Plaintiff filed his request on August 3, and on August 4, Plaintiff's

---

[8]  Plaintiff states in his verified complaint that he filed "numerous grievances"; that "two of the defendants in this case are the grievance officers at this facility [and] have ignore[d] me for months"; and that "Sgt. Canada and Capt. Bailey refused to answer my grievances and numerous requests repeatedly."  (ECF No. 1, ¶ II.C, PageID # 2.)

[9]  In his complaint, Plaintiff alleges that Defendant Bailey ordered that Plaintiff not have access to the law library. (ECF No. 1-1, PageID # 8.)  Plaintiff does not make any statement in his complaint regarding photocopies.

classification status was changed to medium. (*Id.* ¶ 43.) Plaintiff did not appeal from his [other][10] reclassification to a higher custody level during his incarceration at Two Bridges Regional Jail in 2014 and 2015. (*Id.* ¶ 44.)

Defendant Bailey was not involved in the classification or reclassification decisions involving Plaintiff and he did not review the decisions. In addition, Defendant Bailey was not involved in Plaintiff's disciplinary hearings or the criminal charges asserted against Plaintiff. At the time of the incidents described in the complaint, Defendant Bailey had no responsibility for the review of disciplinary decisions; thus, he did not review Plaintiff's disciplinary proceedings. (*Id.* ¶ 4.)[11]

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy,* 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence

---

[10] In his affidavit, Defendant Kyle Canada asserts both that Plaintiff requested a review of his August 2014 maximum security classification and that he did not appeal from the reclassification during his incarceration in 2014 and 2015. (Canada Affidavit ¶¶ 15 – 16, ECF No. 18-4.) Evidently, Plaintiff's August 2014 request for review was his only classification appeal.

[11] With respect to prison policies related to grievances and appeals, Defendants rely exclusively on Defendant Bailey's affidavit (ECF No. 18-3). They do not attach to their motion any actual policies.

sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

## DISCUSSION

Through their motion for summary judgment, Defendants assert that Plaintiff's claims are barred because Plaintiff failed to exhaust the available administrative remedies. (Motion at 2 – 3.) Alternatively, Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's due process theories because the sanctions imposed on Plaintiff (i.e., periods of confinement in segregation) were not atypical and significant hardships. (*Id.* at 3 – 4, 7 – 8.) Defendants otherwise argue that any state law claim of malicious prosecution is within the discretionary function immunity under the Maine Tort Claims Act, and that given the absence of liability for any of the other Defendants, and given the lack of evidence of deliberate indifference, any supervisory liability theory asserted against Defendant Bailey fails. (*Id.* at 5 – 7, 8 – 9.)

**A.      Claims Under 42 U.S.C. § 1983 (Failure to Exhaust)**

Federal law requires a prisoner to exhaust the available administrative remedies before initiating a lawsuit based on 42 U.S.C. § 1983. Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007)

("There is no question that exhaustion is mandatory under the PLRA [Prison Litigation Reform Act] and that unexhausted claims cannot be brought in court.")

The Supreme Court has held that § 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90 – 91. "Compliance with prison grievance procedures … is all that is required … to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

A defendant may raise the § 1997e exhaustion requirement as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Ramos v. Patnaude*, 640 F.3d 485, 488 (1st Cir. 2011) ("The Supreme Court made it plain … that exhaustion under § 1997e(a) is not a jurisdictional condition, and has held it to be an affirmative defense." (citing *Jones,* 549 U.S. at 212)). Because failure to exhaust administrative remedies is an affirmative defense rather than a jurisdictional issue, initially, Defendants bear the burden of proof. *Jones*, 549 U.S. at 216. To satisfy that burden, Defendants must establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca,* 747 F.3d 1162, 1172 (9th Cir.) (en banc), *cert. denied sub nom. Scott v. Albino,* 135 S. Ct. 403 (2014). [12] Thereafter, Plaintiff must present evidence that demonstrates "that there is something in his particular case

---

[12]   To be an available remedy, a grievance procedure must actually apply to the type of claim at issue. *Bean v. Barnhart*, No. 1:13-cv-00196-NT, 2015 WL 3935777, at *5 (D. Me. June 26, 2015) (citing *Booth v. Churner*, 532 U.S. 731, 736 n.4 (2001), and *Malik v. D.C.*, 574 F.3d 781, 785 (D.C. Cir. 2009)). *See also Davis v. Fernandez*, 798 F.3d 290, 294 – 95 (5th Cir. 2015) ("Whenever defendants claim a failure to exhaust, they have the burden to prove that the plaintiff did not exhaust administrative remedies that were actually available to him.").

that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Defendants have established that administrative remedies were available to Plaintiff, including a level two grievance process administered at the Two Bridges Regional Jail.[13] According to Defendant Bailey, a grievance may be initiated by an inmate for an alleged violation of civil, constitutional, or statutory rights. Defendants have also established that Plaintiff did not file a level two grievance regarding any of the matters before the Court and that Plaintiff did not appeal from any decisions issued following the disciplinary hearings.[14] Defendants thus have satisfied their initial burden; Plaintiff, therefore, must demonstrate that the administrative remedies were in fact unavailable to Plaintiff.

Although Plaintiff asserted in his verified complaint that he wrote numerous grievances that were ignored, particularly given the record evidence to the contrary, Plaintiff's general assertion does not establish that Plaintiff filed any level two grievances. Furthermore, the record lacks any evidence that the level two process was otherwise unavailable to Plaintiff. Even if the Court construes Plaintiff's complaint to establish for summary judgment purposes that Defendants ignored one or more of Plaintiff's level one grievances, Plaintiff is not relieved of his obligation to exhaust the level two grievances. In other words, Plaintiff must exhaust all "available" remedies. *Johnson v. Thyng*, 369 Fed. App'x 144, 147 (1st Cir. 2010) ("The emerging case law

---

[13] According to the Second Circuit, "defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (quotation marks and brackets omitted). Here, Defendants have not introduced a copy of the policies they rely on, but instead establish the availability of a grievance procedure and its basic features through Defendant Bailey's affidavit. By not responding to the motion, Plaintiff has waived any potentially available objection to the evidence relied on by Defendants.

[14] Plaintiff's only appeal, according to Defendants' uncontroverted statement, was his appeal of a classification decision.

rejects [the] theory that an optional level of administrative review need not be exhausted for purposes of PLRA.").[15]

Accordingly, Plaintiff's claims under 42 U.S.C. § 1983, including Plaintiff's claims that Defendants violated procedural due process in connection with his disciplinary proceedings, and his claim that Defendant Bailey denied him access to the law library,[16] are unexhausted claims barred by 42 U.S.C. § 1997e(a).

**B.    Claim Regarding Security Classification**

The record reveals that Plaintiff filed an administrative appeal from one of the two decisions by which he was classified as maximum security. Assuming, arguendo, that Plaintiff's appeal exhausted the only available administrative remedy for that classification decision, *see Bean v. Barnhart*, No. 1:13-cv-00196-NT, 2015 WL 3935777, at *6 (June 26, 2015) (Order on Defendants' Failure to Exhaust Defense at 13 – 14, ECF No. 69), Plaintiff nevertheless cannot prevail on a constitutional claim.

First, a prisoner does not have a constitutional right to a particular classification. "[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). "[A] prisoner has no constitutional right to be incarcerated in a particular prison or to be held in a specific security classification." *Williams v. Lindamood*, 526

---

[15]  Plaintiff has also failed to present any record evidence from which the Court could conclude that he filed any administrative appeals that Defendants assert were available to him.

[16]  Although Defendants did not mention in their motion Plaintiff's allegation regarding law library access, they have established that Plaintiff only filed a level two grievance in connection with a complaint he had over access to photocopies. Assuming, arguendo, that Plaintiff exhausted the available administrative remedies regarding photocopies, the record lacks evidence to support any argument that Plaintiff exhausted any claim related to the denial of access to the law library.

11

Fed. App'x 559, 563 (6th Cir. 2013) (quoting *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005)); *see also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

Because Plaintiff has no absolute right to a certain classification, unless his classification constitutes an "atypical and significant hardship … in relation to the ordinary incidents of prison life," Plaintiff does not have an actionable claim based on any alleged procedural irregularities or misapplication of state law classification standards. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In other words, the law does not recognize a constitutional liberty interest unless the conditions imposed present an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484.

Defendants argue that the record does not support a finding that Plaintiff's time in segregation constitutes an atypical and significant hardship. (Motion at 4 (Rubashkin), 7 – 8 (Canada).) Additionally, Defendants contend the record lacks evidence of deliberate indifference on the part of Defendant Bailey in his supervisory capacity. (Motion at 8 – 9.)

Although in his verified complaint Plaintiff alleges that he spent seven weeks in segregation,[17] according to the summary judgment record, Plaintiff was in segregation for 20 days.[18] Significantly, even if the record supported a determination that Plaintiff's time in segregation exceeded 20 days, the amount of time alone could not reasonably be considered atypical or a hardship. Indeed, in *Sandin*, the Supreme Court held that a 30-day period of segregated confinement did not amount to an atypical and significant hardship, where the conditions for inmates in general population also involved "significant amounts of 'lockdown

---

[17] Plaintiff also alleges "months in 23 hr. lockdown." (Complaint ¶ V, PageID # 3.)

[18] The 20-day period is based on the time in segregation as the result of the classification decision from which Plaintiff appealed. If one considers the time Plaintiff was in segregation as the result of the classification decision from which he did not appeal, the time would include an additional week.

12

time'." 515 U.S. at 486. Similarly, the Ninth Circuit has held that two weeks of administrative segregation was not a hardship. *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010).

The issue is whether the record can support a finding that the conditions of Plaintiff's segregation could be considered an atypical and significant hardship. Plaintiff, who has the burden to establish a factual basis for his claim, has failed to allege or otherwise provide record evidence from which a fact finder could conclude that his time in segregation was atypical or a significant hardship. In fact, Plaintiff has presented no evidence of the conditions of segregation or how the segregation conditions might differ from the conditions for the general population at the jail. Plaintiff thus cannot prevail on a claim based on his reclassification.

**C.     Claim for Malicious Prosecution**

Defendants construe Plaintiff's complaint to assert a claim of malicious prosecution based on Plaintiff's allegations against Defendant Rubashkin regarding the summonses issued to Plaintiff for trafficking and for failing to sign the trafficking summons. Defendants maintain that summary judgment is appropriate because the decisions were discretionary functions for which Defendant Rubashkin is immune under the Maine Tort Claims Act. (Motion at 5 – 7.)

To the extent Plaintiff has attempted to assert or has asserted a state law claim against one or more of the Defendants, his state law claims are not within the original jurisdiction of this Court. Because Defendants are entitled to summary judgment on Plaintiff's federal claims, and because dismissal of the federal claims would occur well in advance of trial, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and dismiss any state law claims without prejudice. 28 U.S.C § 1367(c)(3); *Shuper v. Tri-Cty. Mental Health Servs.*, No. 2:14-CV-00476-GZS, 2014 WL 6893852, at *3 (D. Me. Dec. 4, 2014), *appeal dismissed* (1st Cir.

May 4, 2015) (citing *Keenan v. Int'l Ass'n of Machinists & Aerospace Workers*, 632 F. Supp. 2d 63, 72 (D. Me. 2009)).

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' Motion for Summary Judgment (ECF No. 17) on Plaintiff's federal claims, and enter judgment in favor of Defendants on Plaintiff's federal claims. I further recommend the Court dismiss Plaintiff's state claims without prejudice.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 26th day of April, 2016.